UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MIRABILIS VENTURES, INC., | ) | Case No.  6:08-bk-04327-KSJ |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| AEM, INC., | ) | Case No.  6:08-bk-04681-KSJ |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| AEM, INC., and | ) | |
| MIRABILIS VENTURES, INC. | ) | |
| | ) | Adv. Proc. 6:11-ap-00087-KSJ |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

These cases have long and tortured histories of disagreement between the United States of America, Internal Revenue Service (IRS) and related debtors Mirabilis Ventures, Inc. ("Mirabilis") and AEM, Inc. (AEM).[1]  In resolving the IRS' claim in the Mirabilis bankruptcy case, this Court determined Mirabilis overpaid taxes to the IRS.  Though the amount of Mirabilis' overpayment has not been determined by the Court, the IRS concedes it is in excess of $1.1 million.[2]

---

[1] The Court detailed much of this history in its Initial Findings of Fact and Conclusions of Law.  Case No. 8-bk-4327, Doc. No. 658.

[2] Case No. 8-bk-4327, Doc. No. 658, at 26; Doc. No. 660.  Amended Claim No. 4, filed by the IRS in the AEM case, sets the amount of overpayments at $1,122,848.29.  The IRS maintains it is entitled to offset this amount against AEM's tax liabilities.

Mirabilis is not yet entitled to a refund of its tax overpayment, however, because whether related debtor AEM owes the IRS employment taxes is still in dispute.[3]  The IRS contends AEM owes $3,195,661.83.[4]  AEM contends it not only does not owe any employment taxes but is entitled to a refund of approximately $24 million, the amount AEM "improperly" paid on behalf of three other companies: Presidion Solutions VI, Inc., Presidion Solutions VII, Inc., and National MedStaff, Inc. ("Non-Debtor Companies").[5]  If it is determined AEM owes taxes, the Court then will consider whether the IRS may apply Mirabilis' overpayments to AEM's outstanding tax liability.[6]  The Court now must address several preliminary motions before holding a needed evidentiary hearing to resolve the remaining factual questions regarding AEM's tax liability (IRS' Claim No. 4) and Mirabilis' tax overpayments.

In the AEM case, the IRS moved for summary judgment on AEM's $24 million refund request.[7]  AEM moved for sanctions against the IRS.[8]  The IRS made two motions in limine regarding evidence at trial.[9]  AEM lastly made an emergency motion for bifurcation of the trial on its objection to Claim No. 4 and refund request and for leave to file an adversary proceeding relating back to the date it filed its objection to claim.[10]

Debtors then filed the contemplated adversary proceeding against the IRS on May 20, 2011.  The complaint restates AEM's objection to claim and refund request and asserts fraudulent transfer causes of action pursuant to both federal and state law on behalf of both AEM

---

[3] This issue is presented by the IRS' Claim No. 4 and AEM's Objection to Claim No. 4.  Case No. 8-bk-4681, Doc. No. 162.

[4] Case No. 08-bk-04681, IRS Claim No. 4.

[5] Case No. 08-bk-04681, Doc. No. 162.  AEM originally sought more than $25 million from the IRS, but it has revised its request to slightly less than $24 million.  Adversary Proceeding No. 11-ap-87, Doc. No. 1, ¶ 54 (stating amount of refund due as $23,981,442.14).

[6] Case No. 8-bk-4327, Doc. No. 658 at 26-27.  In an effort to obtain Court approval for a setoff, the IRS filed a Motion for Relief from Stay.  Case No. 8-bk-4327, Doc. No. 660.  That motion cannot be resolved until the question of AEM's tax liability is determined.  The Court holds the motion for relief in abeyance until a party asks for a further hearing on the motion.

[7] Case No. 8-bk-4681, Doc. No. 251.  AEM's contention that it overpaid taxes was presented for the first time in AEM's Objection to Claim No. 4 of the IRS.  Doc. No. 162.  AEM's official refund request was made via filing of amended Form 941s for first and second quarters 2007, in December 2009.

[8] Case No. 8-bk-4681, Doc. No. 260.

[9] Case No. 8-bk-4681, Doc. Nos. 261, 262.

[10] Case No. 8-bk-4681, Doc. No. 269.

and Mirabilis.[11]   The IRS moved to dismiss the complaint with prejudice, on the grounds the fraudulent transfer causes of action are barred by the statute of limitations and the remaining counts are duplicative of the issues already being litigated in the contested matter arising from IRS' Claim No. 4 in the AEM bankruptcy case, which was originally set for trial on April 22, 2011.[12]

## Background

AEM is a wholly-owned subsidiary of Mirabilis.  Mirabilis and its numerous subsidiaries, including AEM, were controlled by Frank L. Amodeo who used the companies to perpetrate one of the largest payroll-processing frauds in U.S. history.  Amodeo personally stole millions of dollars in federal income and Social Security withholding taxes from the companies and their clients rather than paying those monies to the IRS.  Amodeo exercised control over AEM's bank accounts and, as a part of his fraud scheme, directed transfers of funds through those accounts.

Amodeo became aware he and his companies were under investigation for tax crimes in late 2006.  Subsequently, the drama of debtors' disputes with the IRS unfolded in two venues: a criminal prosecution in United States District Court and bankruptcy cases in this Court.  On April 25, 2008, the U.S. Attorney instituted *in rem* civil forfeiture proceedings in the United States District Court for the Middle District of Florida against certain properties owned by Amodeo and Mirabilis.[13]   In late May and early June 2008, Mirabilis and AEM filed for relief under Chapter 11 of the Bankruptcy Code.[14]   At that time, R. W. Cuthill, an experienced receiver and liquidation trustee, was installed as President of Mirabilis to oversee debtors' liquidation.

On June 13, 2008, the IRS filed Claim No. 2 in the Mirabilis case, asserting Mirabilis had outstanding corporate tax liability of $438,173.48.

---

[11] AP No. 11-ap-87, Doc. No. 1.
[12] AP No. 11-ap-87, Doc. No. 14.
[13] Case No. 6:08-cv-00670-ACC-KRS, Doc. No. 1.
[14] Mirabilis filed bankruptcy on May 27, 2008; AEM filed on June 5, 2008.  All references to the Bankruptcy Code are to Title 11 of the United States Code.

On July 10, 2008, the IRS filed Claim No. 4 in the AEM bankruptcy case, asserting AEM had Form 941 payroll tax liability for the second quarter of 2007 in the amount of $3,195,661.83 (composed of a priority unsecured claim for $2,492,059.53 and a general unsecured claim of $703,602.30, including interest).   The IRS later amended this claim after the claims bar date. Amended Claim No. 4 is also for $3,195,661.83 but recharacterizes the debt: claiming $1,122,848.29 as debt secured by monies the IRS is holding (as a result of Mirabilis tax overpayments) and $2,072,813.54 as priority unsecured debt.

On August 6, 2008, Amodeo was indicted for conspiracy, failure to remit payroll taxes, wire fraud and obstruction of an agency investigation.   That same month, the U.S. Attorney moved to stay the debtors' bankruptcy cases, pending resolution of the ongoing criminal proceedings against Amodeo.

On September 23, 2008, Amodeo pleaded guilty to his crimes.[15]   As a part of his plea agreement, Amodeo admitted the assets of Mirabilis and AEM were proceeds of his fraud, and he forfeited them.

On October 30, 2008, AEM and Mirabilis were indicted for various tax crimes, including conspiracy and wire fraud.   Although the debtors initially pleaded not guilty in the criminal proceedings, Cuthill began negotiations with the U.S. Attorney's office to change their pleas to nolo contendere.[16]   The Office of the U.S. Attorney would not consent to nolo contendere pleas and pushed for trial.

In November 2008, the debtors and the U.S. Attorney reached a settlement in the bankruptcy case.   Pursuant to the terms of the settlement, debtors' bankruptcies would move

---

[15] Amodeo currently is serving a twenty-two-year sentence in federal prison.

[16] "Nolo contendere" means "I do not contest it."   "Throughout its history, . . . the plea of nolo contendere has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency." *North Carolina v. Alford*, 400 U.S. 25, 36 n.8, 91 S. Ct. 160, 167 n.8 (1970).

forward, and the IRS would receive an allowed general unsecured claim of $200 million for the government's civil forfeiture claims.[17] The criminal cases against AEM and Mirabilis continued.

On October 9, 2009, AEM objected to IRS' Claim No. 4 and stated it had overpaid taxes by "improperly" paying withholding taxes for not only itself but also for the three Non-Debtor Companies.[18]  In December 2009, AEM filed amended tax returns for first and second quarters 2007, asserting overpayment of taxes and entitlement to a refund of approximately $25 million.

On May 19, 2010, AEM and the IRS agreed to try AEM's objection to the IRS' $3 million claim and AEM's request for a $25 million refund in the same proceeding.[19]

Two days later, on May 21, 2010, Mirabilis and AEM filed a motion with the U.S. District Court, Judge John Antoon II, seeking the court's approval of their nolo contendere pleas. The companies' motion was based on their assertions that Cuthill lacked the personal knowledge of criminal acts that would be necessary for him to enter guilty pleas for the corporations and that guilty pleas would undercut the debtors' recovery on professional liability claims they were pursuing against those who helped devise and orchestrate the criminal scheme.  The debtors' motion stated the pursuit of these claims was in the public interest because "[t]he majority of the remaining assets in the Defendant-Debtors bankruptcy estates are in the form of professional malpractice claims" and "the taxpayers are the real majority creditors" in the bankruptcy cases.[20] The motion made no mention of AEM's claim for a tax refund.

In June 2010, after considering the parties' briefs and hearing oral argument, Judge Antoon granted AEM and Mirabilis' motion to enter nolo contendere pleas.[21]  Cuthill entered the

---

[17] Case No. 8-bk-4327, Doc. No. 101 at 8.
[18] Case No. 8-bk-4681, Doc. No. 162.
[19] Case No. 8-bk-4327, Doc. No. 594 at 8-10.  At a status conference on February 25, 2011, counsel for AEM acknowledged: (1) the agreement to try both disputes in one proceeding, and (2) the fact that, although AEM could have filed a fraudulent transfer action, it had elected not to do so because it felt all the disputed issues could be resolved in the context of its claim objection.  Case No. 8-bk-4681, Doc. No. 247.
[20] *U.S. v. AEM, Inc., et al.*, Case No. 6:08-cr-231-JA-KRS, Doc. No. 139, at 9-10.
[21] *Id.*, Doc. No. 149.

pleas on behalf of the corporations.  As punishment for their crimes, the corporations received a

$200 million forfeiture judgment.[22]

Also in June 2010, the IRS amended Claim No. 2 in the Mirabilis case to claim $0.00.

The IRS conceded Mirabilis owed no taxes and, in fact, had overpaid the IRS.  After the criminal

case was resolved, this Court issued Initial Findings of Fact and Conclusions of Law resolving

certain questions of Mirabilis' tax liability.[23]  The Court concluded Mirabilis had overpaid the

IRS; but the specific amount of the overpayment was not determined.  Also, the question of

whether Mirabilis was due a refund could not be decided until the existence and amount of

AEM's tax liability was determined.

The Court set the final evidentiary hearing on AEM's Objection to Claim No. 4,

including AEM's refund request, for April 22, 2011.  The IRS advised the Court it did not

believe it would call any witnesses as the AEM matter could be resolved as a matter of law;

AEM advised the Court it intended to call only two, possibly three, witnesses:  Cuthill, Kirtus

Bocox (the accountant who prepared AEM's amended tax returns in 2009), and possibly a

representative of the IRS.[24]

At the end of March 2011, the IRS filed a motion for partial summary judgment

pertaining only to AEM's refund request.[25]

The next month brought a flood of filings.  AEM filed a motion for sanctions against the

IRS.[26]  The IRS filed two evidentiary motions in limine[27] and a motion for relief from stay.[28]

And, four days before the final evidentiary hearing, on April 18, 2011, AEM filed an emergency

---

[22] This is the same $200 million that the debtors and United States had agreed would exist as an allowed general unsecured claim in the debtors' bankruptcies.  *See supra* at 5-6.

[23] Case No. 8-bk-4327, Doc. No. 658.

[24] Case No. 8-bk-4681, Doc. No. 247.  AEM's responses to interrogatories also identified Cuthill and Bocox as the only people it believed to have knowledge of the facts relevant to the issues presented by the IRS' Claim No. 4 and AEM's refund request.  Case No. 8-bk-4681, Doc. No. 251, Ex. F.

[25] Case No. 8-bk-4681, Doc. No. 251.

[26] Case No. 8-bk-4681, Doc. No. 260.

[27] Case No. 8-bk-4681, Doc. Nos. 261, 262.

[28] Case No. 8-bk-4327, Doc. No. 660.

motion to bifurcate the hearing on the claim objection, amend its claim objection, and file an adversary proceeding relating back to October 9, 2009 (the date AEM filed its Objection to Claim).[29]

On April 22, 2011, the Court continued the final evidentiary hearing originally set for the same day, reopened discovery, and ordered the parties to file all pleadings related in any way to the issues raised in Claim No. 4 and the Objection to Claim by May 20, 2011.  The Court also ordered the parties to mediate their disputes.[30]

On May 20, 2011, debtors filed an adversary proceeding against the IRS.  The complaint objects to Claim No. 4 in the AEM bankruptcy; seeks a determination of AEM's tax liability for 2007; and asserts payments AEM and Mirabilis made to the IRS were fraudulent transfers.[31]  The IRS moved to dismiss the complaint.[32]

Court-ordered mediation did not resolve the parties' disputes.  This memorandum opinion addresses the pending motions.

### The IRS' Motion for Partial Summary Judgment on the Claim Objection is Granted

Claim No. 4 filed by the IRS and debtor AEM's Objection to Claim present two issues: (1) does AEM owe the IRS Form 941 taxes for second quarter 2007? and (2) is AEM owed a refund of approximately $24 million by the IRS for overpayment of Form 941 taxes in 2007? The IRS has moved for summary judgment on the second issue only — whether AEM is owed a refund.

AEM's reason for requesting the refund is that, in 2007, it paid first and second quarter 2007 Form 941 taxes for the Non-Debtor Companies.  AEM did not own these entities, contends it was not obligated to pay taxes on their behalf, and wants the money paid on their behalf returned.

---

[29] Case No. 8-bk-4681, Doc. No. 269.
[30] Case No. 8-bk-4681, Doc. No. 286.
[31] AP No. 11-ap-87, Doc. No. 1.
[32] AP No. 11-ap-87, Doc. No. 14.

Under Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[33] The moving party has the burden of establishing the right to summary judgment.[34]  "When a motion for summary judgment has been made properly, the nonmoving party may not rely solely on the pleadings, but . . . must show that there are specific facts demonstrating that there is a genuine issue for trial."[35]  Conclusory allegations by either party, without specific supporting facts, have no probative value.[36]

In determining entitlement to summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[37]  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."[38]  A material factual dispute precludes summary judgment.[39]

The facts material to this Court's decision regarding AEM's entitlement to a refund are not in dispute:

- In 2007, AEM filed Form 941 tax returns for first and second quarter 2007 that included the combined employment tax liabilities of AEM and the three Non-Debtor Companies—Presidion Solutions VI, Inc., Presidion Solutions, VII, Inc., and National MedStaff.[40]

---

[33] Fed. R. Civ. P. 56.
[34] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).
[35] *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).
[36] *Evers v. General Motors Corp.* 770 F.2d 984, 986 (11th Cir. 1985).
[37] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).
[38] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).
[39] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986).
[40] The IRS refers to these returns as "consolidated" returns.  AEM argues that the filing of a "consolidated" Form 941 return is improper, and the IRS concedes there is no statutory authority for a "consolidated" Form 941 tax return.  Whether such a filing is proper, however, does not change the undisputed historical fact: AEM filed one return for each of the first and second quarters of 2007 and included on each of those returns the employment taxes owed by AEM and the Non-Debtor Companies.

- "In 2006 and 2007, all four companies deposited their total payrolls into a bank account, maintained at Bank of America, in the name of AEM d/b/a Mirabilis HR."[41]

- These deposits included funds for payroll taxes for all four companies.[42]

- The IRS was paid Form 941 taxes for the first two quarters of 2007 from the same Bank of America account in AEM's name, on behalf of: (1) AEM, (2) Presidion Solutions VI, Inc., (3) Presidion Solutions VII, Inc., and (4) National MedStaff, Inc.

- The IRS filed Claim No. 4 in AEM's bankruptcy case, asserting AEM has Form 941 tax liability for second quarter 2007 of over $3 million.

- On October 9, 2009, AEM objected to Claim No. 4 and stated it had overpaid taxes because it had improperly paid 941 tax liability of the Non-Debtor Companies.

- In December 2009, AEM filed amended Forms 941 for the first and second quarter of 2007, on its own behalf only, seeking a refund of more than $25 million, on the basis it had inadvertently included income and payroll tax liabilities of the Non-Debtor Companies on its original Form 941s and paid tax deposits for those other entities out of AEM's bank account.

These undisputed facts support summary judgment for the IRS. AEM is not entitled to a refund because the monies that were paid to the IRS on behalf of the Non-Debtor Companies are not AEM's property to recover. [43]

---

[41] AEM Response to Interrogatory No. 1, United States' First Set of Interrogatories. Case No. 8-bk-4681, Doc. No. 251, Ex. F.

[42] Case No. 8-bk-4681, Doc. No. 275 at 18.

[43] The IRS makes several other arguments in support of its motion. The IRS' arguments that application of the doctrines of judicial estoppel, voluntary payment, and variance require summary judgment in its favor are preserved. However, because the discussion below disposes of AEM's refund claim in its entirety, the Court does not address those other arguments in this opinion.

AEM contends the tax payments made to the IRS in 2007 on behalf of the Non-Debtor Companies are AEM's property for the sole reason the payments were made from a bank account in AEM's name. AEM provides no other basis for its contention that it owned those monies. But, it is undisputed that the customers of AEM **and the Non-Debtor Companies** directly deposited funds into the same account. It is also undisputed that **the deposited funds were the four companies' total payrolls and included funds for payroll taxes due from each of the four companies**.[44] The funds were used to pay all four entities' payroll taxes for first and second quarter 2007.

AEM and the IRS dispute whether the funds in the AEM account were segregated by company. AEM contends they were rendered untraceable to any particular client or any of the four companies by virtue of their commingling and dissipation. The IRS contends AEM maintained detailed records segregating the finances of the four companies who deposited funds into the AEM account. This factual dispute is irrelevant, however, as commingling of funds would not transform the Non-Debtor Companies' money, later paid to the IRS as payroll taxes due from those companies, into AEM's property. AEM's repeated assertion that the transformation occurred does not make it so.[45]

Florida law applies to determine AEM's property right in the monies; Florida law is clear that depositing money in the account of another does not necessarily transfer ownership of that money to the account owner.[46] The identity of the real owner of the money is a factual determination.[47] Here, the undisputed facts—in 2006 and 2007, customers of AEM and the Non-Debtor Companies directly deposited funds into the AEM account at Bank of America; the deposited funds were the companies' total payrolls and included funds for payroll taxes due from

---

[44] Case No. 8-bk-04681, Doc. No. 275 at 18.

[45] AEM provides no legal authority for this assertion. Its brief cites only the deposition testimony of Mr. Cuthill in support of the proposition. *See* Case No. 8-bk-4681, Doc. No. 275 at 18.

[46] *See Ginsberg v. Goldstein*, 404 So.2d 1098 (Fla. 3d DCA 1981); *James v. Commercial Bank at Apopka*, 310 So. 2d 399 (Fla. 4th DCA 1975).

[47] *See James*, 310 So.2d at 399.

each of the four companies; and the funds were used to pay the four entities' payroll taxes for first and second quarter 2007—demonstrate the monies that were eventually paid to the IRS continued to belong to each of the Non-Debtor Companies after they were deposited in the AEM account. The undisputed facts also demonstrate the Non-Debtor Companies intended that taxes would be paid from those monies. Most importantly, the undisputed facts <u>do</u> <u>not</u> support the conclusion that the Non-Debtor Companies intended to transfer ownership of the monies they owed in payroll taxes to AEM. Absolutely nothing in the record supports this untenable conclusion.

Allowing AEM a refund of the payroll tax payments made to the IRS on behalf of the Non-Debtor Companies would be inequitable. The deposits were the Non-Debtor Companies' entire payrolls, **including monies owed for payroll taxes**. The Non-Debtor Companies' first and second quarter 2007 payroll taxes were paid with those monies, and the IRS credited each company for the payments. If AEM were to receive a refund of those monies, it would be receiving an unjustified windfall of $24 million. The Non-Debtor Companies then would owe the IRS for first and second quarter 2007 payroll taxes, even though the money to pay those taxes was collected and paid by AEM in 2007.

What AEM is asking this Court to do is to give it $24 million at the expense of the Non-Debtor Companies and their innocent customers, on whose behalf and with whose money it paid payroll tax liabilities to the IRS. AEM is not entitled to a refund of the almost $24 million in taxes it claims to have improperly paid on behalf of the Non-Debtor Companies. AEM had no right to the monies in 2007, and AEM has no right to the monies today. The IRS' motion for partial summary judgment on AEM's Objection to Claim No. 4 is GRANTED.

<u>AEM's Motion for Sanctions is Denied</u>

AEM moves this Court for sanctions against the IRS for filing and continuing to prosecute its Amended Claim No. 4.[48]  The motion, filed in April 2011, argues the IRS has no evidence to substantiate a claim against AEM for 2007 payroll taxes and that the IRS "intentionally dragged out the litigation of the AEM IRS Claim Objection."[49]  The motion argues the IRS' claim was made in bad faith because it: (1) was based solely upon an invalid, unsigned tax return, and (2) the IRS knew the payments AEM made to the IRS in 2007 were more than sufficient to offset AEM's tax liability.  AEM appeals to the Court to act, pursuant to its inherent authority and § 105 of the Bankruptcy Code, to award sanctions against the IRS in the amount of AEM's attorneys' fees in responding to Claim No. 4.

AEM's motion cites no evidence to support its contentions.  Neither does AEM provide any legal authority for its arguments that the IRS' claim is facially invalid because it relies on unsigned returns and that AEM is due a refund because it used its own monies to pay taxes on behalf of the Non-Debtor Companies.

Most importantly, the IRS' claim for tax liability is a colorable one.  The IRS based its claim on tax assessments created from filed returns, as evidenced by the Certificates of Assessments and Payments attached to the IRS' motion for partial summary judgment (notably, filed prior to AEM's motion seeking sanctions).[50]  And, the IRS' position—that AEM has tax liability because it underpaid in 2007 and is not entitled to credit for the payments made on behalf of the Non-Debtor Companies—is far from frivolous.  Indeed, the IRS' arguments have resulted in partial summary judgment against AEM on its refund claim, and the Court soon will

---

[48] Case No. 8-bk-4681, Doc. No. 260 at 4.

[49] *Id.*

[50] Case No. 8-bk-4681, Doc. No. 251, Ex. D.  Mooting the legal question of whether signed tax returns are required to be presented to demonstrate taxpayer liability, the IRS located and produced AEM's second quarter 2007 tax return, signed by Frank Amodeo, shortly after the motion for sanctions was filed.  The IRS does not seek payment for first quarter 2007 payroll taxes from AEM.

resolve the question of AEM's remaining tax liability, if any.  AEM's Motion for Sanctions is DENIED.

The IRS' Motions in Limine are Denied

The IRS filed two motions in limine in anticipation of trial.  Both motions seek rulings excluding evidence.

The first motion[51] seeks to exclude all evidence supporting any ground for AEM's refund request other than that set forth in AEM's amended tax returns (filed in December 2009).  Because summary judgment has been granted for the IRS on AEM's refund claim, there will be no trial of the refund request.  This motion is denied as moot.

The IRS' second motion in limine[52] seeks to exclude the testimony of R. W. Cuthill, the current president and sole employee of AEM.  It also seeks to exclude AEM's exhibits 30-32, 36-62, 67, 72, and 73.  The motion is made pursuant to Fed. R. Evid. 602, which requires a percipient witness to have personal knowledge of the matters to which he testifies, and Fed. R. Evid. 803(6), which requires authentication by a qualified witness for a business record to be excepted from the rule against hearsay.

The record is insufficient for the Court to make evidentiary rulings at this time; the scope of Cuthill's testimony is undetermined, and the evidentiary purpose of the exhibits identified in the motion is not yet clear.  If and when Cuthill's testimony is offered, the Court will rule on all contemporaneous objections to his testimony.  The Court will rule on objections to documentary exhibits at the time they are moved into evidence.  The Court also denies this motion in limine.

---

[51] Case No. 8-bk-4681, Doc. No. 261.
[52] Case No. 8-bk-4681, Doc. No. 262.

AEM's Emergency Motion to Bifurcate the Hearing and for
Leave to File an Adversary Proceeding Relating Back to the Claim Objection is Denied

On April 18, 2011, <u>four</u> <u>days</u> before the scheduled trial on the IRS' Claim No. 4 and AEM's Objection to Claim, AEM made an emergency motion.  AEM sought bifurcation of the single evidentiary hearing into two: one to try AEM's liability for the tax debt (IRS' Claim No. 4) and another to try AEM's $24 million refund claim.  AEM also sought permission to file a fraudulent transfer adversary proceeding against the IRS as an additional means of recovering the $24 million it contends it is owed by the IRS.  AEM implicitly acknowledged a fraudulent transfer action was untimely but argued it would relate back to the filing of the Objection to Claim on October 9, 2009.

The IRS' Claim No. 4 was filed over two years before this emergency motion; AEM's Objection to Claim, which included its contention that AEM had overpaid taxes, was filed eighteen months before the emergency motion.  Almost a year before seeking bifurcation, on May 19, 2010, AEM and the IRS agreed to try AEM's objection to the IRS' $3 million claim and AEM's request for a refund in the same proceeding.[53]  And, at a status conference on February 25, 2011, two months before the trial date, counsel for AEM again acknowledged the parties' agreement to try both disputes in one proceeding and stated that, although AEM could have filed a fraudulent transfer action, it had elected not to do so because it felt all the disputed issues could be resolved in the context of its claim objection.[54]

AEM's belatedly filed emergency motion appears to be a reaction to the legal positions taken by the IRS in its motion for summary judgment and motions in limine; yet, AEM provides no explanation why the IRS' motions create the necessity for bifurcation of the hearing or filing of a fraudulent transfer adversary proceeding.  AEM pursued its refund claim based **solely** on an overpayment theory from the time it filed its claim objection in October 2009.  In open court,

---

[53] Case No. 8-bk-4327, Doc. No. 594 at 8-10.
[54] Case No. 8-bk-4681, Doc. No. 247.

AEM explicitly agreed to try the refund claim in the same proceeding as its objection to the IRS' Claim No. 4.    Until February 2011, AEM did not use the phrase "fraudulent transfer" in reference to its claim objection or refund request, in writing or at a hearing; and, even on February 25, 2011, when the subject was discussed for the first time, AEM's counsel acknowledged AEM had chosen **not** to pursue a fraudulent transfer action.

AEM's motion is denied.    First, there is nothing left to bifurcate.    In granting the IRS' motion for partial summary judgment, the Court has determined AEM is not entitled to a refund because AEM had no right to the monies paid to the IRS on behalf of the Non-Debtor Companies.    Second, AEM cannot wait until the eve of trial to rescind its agreement to proceed only on its overpayment theory.    Both the IRS and the Court relied on AEM's statement that all disputes could be resolved with the claim objection.    Until four days before the trial, AEM never expressed a desire to pursue a fraudulent transfer theory of recovery; indeed, it affirmatively disavowed such a desire.    As a result, discovery was concluded; a trial date was set.    It is simply too late for AEM to change its legal theory.    AEM's emergency motion to bifurcate the hearing and for leave to file an adversary proceeding relating back to the date it filed its objection to claim is DENIED.

<u>The IRS' Motion to Dismiss the Adversary Complaint is Granted</u>

On May 20, 2011, AEM filed its ten-count adversary proceeding complaint against the IRS.[55]    Mirabilis is also a plaintiff.    Count I of the complaint restates AEM's objection to the IRS' Claim No. 4.    Count II seeks a determination of AEM's tax liability as $0.00 and seeks refund of $23.9 million in overpayments by AEM.    The remaining eight counts are actual and constructive fraudulent transfer claims alleged pursuant to §§ 544, 548 and 550 and the Florida Uniform Fraudulent Transfer Act (FUFTA).    Counts III and IV seek return of $23.9 million in alleged actually fraudulent transfers of AEM money to IRS; Counts VII and VIII seek to avoid

---

[55] AP No. 11-ap-87, Doc. No. 1.

the transfer of the same $23.9 million and additional monies AEM contends were constructively fraudulent transfers by AEM to the IRS.   Counts V, VI, IX, and X seek to avoid transfers of Mirabilis funds as actually and constructively fraudulent transfers.

The IRS moves to dismiss the entire complaint on two grounds.  First, the IRS argues each of the fraudulent transfer actions (Counts III through X, inclusive) is barred by the statute of limitations in § 546(a).[56]  AEM filed its petition on June 5, 2008, and the statute of limitations ran as to its fraudulent transfer claims on June 5, 2010.  Second, the IRS argues Counts I and II are duplicative of the litigation regarding Claim No. 4 in AEM's bankruptcy case and are not proper stand-alone causes of action.

AEM and Mirabilis do not dispute that § 546(a) is the governing statute of limitations or that the limitations period provided by the statute elapsed almost a year before they filed the fraudulent transfer adversary proceeding.  Instead, plaintiffs make three arguments why the statute of limitations should not bar their fraudulent transfer claims: (1) the complaint relates back to the objection to the IRS' Claim No. 4 that AEM filed in October 2009; (2) equitable tolling bars the application of the statute of limitations; and (3) the IRS waived the statute of limitations.  The Court finds no merit in plaintiffs' arguments.

First, AEM's untimely complaint cannot relate back to AEM's Objection to Claim filed in October 2009 for two reasons: (1) the claim objection did not put the IRS or the Court on notice that either Mirabilis or AEM intended to bring any action alleging either entity

---

[56] Section 546(a) states:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--
> (1) the later of--
> (A) 2 years after the entry of the order for relief; or
> (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
> (2) the time the case is closed or dismissed.

fraudulently transferred monies to the IRS;[57] and (2) the complaint alleges facts that are new and distinct from those in the claim objection.

"The critical issue in Rule 15[(b)] determinations is whether the original [pleading] gave notice to the defendant of the claim now being asserted."[58]  AEM's Objection to Claim No. 4 did not put the IRS or the Court on notice that it or Mirabilis intended to pursue a fraudulent transfer action.  The claim objection states, in pertinent part:

> 8. First, the IRS has miscalculated, and AEM has overpaid, its withholding taxes.  The IRS improperly submitted its proof of claim based on, and AEM improperly paid withholding taxes on, the estimated taxes for four distinct and separate companies: (1) AEM, Inc.; (2) Presidion Solutions VI, Inc.; (3) Presidion Solutions VII, Inc.; and (4) National MedStaff, Inc.  However, the IRS and AEM should only have included AEM, Inc. when calculating the amount of withholding taxes AEM was required to pay to IRS.
>
> 9.  Using the correct calculations, as reflected by the attached copy of consolidating spreadsheets, AEM has already paid its due withholding taxes and thus does not owe any withholding taxes to IRS.  In fact, based on AEM's overpayment of the taxes, AEM still retains a credit balance.  As such, the IRS' claim must be disallowed in its entirety.  True and correct copies of the spreadsheets evidencing payments made and the proper calculations of AEM's withholdings are attached hereto as composite Exhibit "A."[59]

The claim objection states only that AEM objects to the IRS' claim on the basis AEM improperly paid taxes for companies other than itself and, therefore, overpaid the IRS.  It says nothing at all about: (1) Mirabilis (including any monies paid by Mirabilis or out of Mirabilis bank accounts); or (2) any fraud, actual or constructive.  The claim objection does not even

---

[57] AEM's counsel stated as much when he said, in May 2010, "I think [counsel for the IRS] is combining the request for refund with the claim objection. . . . this is just an objection to their 3 million dollar claim.  If she wants to combine that with the trial to give us 26 million if we win, I'm happy to do that, but I don't think that's what's teed up . . . ." Case No. 8-bk-4327, Doc. No 594 at 8-9.  Notably, the discussion ended with the parties and the Court agreeing to try "the whole thing in one swoop." *Id.* at 10.  No statement was made about any fraudulent transfer causes of action by AEM.  Neither was there any discussion of any action to recover any monies on behalf of Mirabilis.

[58] *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) (citing *Woods Exploration & Producing Co., Inc. v. Aluminum Co. of America*, 438 F.2d 1286, 1299-1300 (5th Cir. 1971), cert. denied, 404 U.S. 1047, 92 S. Ct. 701 (1972)).  Rule 15 is made applicable to adversary proceedings by Fed. R. Bankr. P. 7015.

[59] Case No. 8-bk-4681, Doc. No. 162.

indicate AEM seeks a refund from the IRS.[60]    For this reason alone, the fraudulent transfer

counts of the complaint cannot relate back to the filing of the claim objection in October 2009.[61]

The complaint's fraudulent transfer counts cannot relate back to the claim objection for a

second reason: the complaint alleges facts that are new and distinct from those in the claim

objection.  "When new or distinct conduct, transactions, or occurrences are alleged as grounds

for recovery, there is no relation back, and recovery under the [new] complaint is barred by

limitations if it was untimely filed."[62]  The complaint alleges fraudulent transfers of Mirabilis'

money; these are entirely different monies and transactions than the overpayments referenced in

the claim objection (all AEM funds).  This is also true with regard to the complaint's allegations

that AEM fraudulently transferred funds in addition to the $24 million in overpayments AEM

pursued through its claim objection and subsequent refund request.  And, with respect to all the

transfers alleged in the complaint (including those that are referred to as overpayments in the

claim objection), the complaint relies on new allegations of conduct and circumstances that were

not even hinted at in the claim objection.  These new allegations include: that Amodeo made the

transfers to the IRS; that Amodeo lacked authority to transfer the funds to the IRS; that the

monies were transferred for the benefit of the IRS; that the monies were transferred with actual

intent to hinder, delay or defraud plaintiffs' creditors; and that plaintiffs were insolvent at the

time of the transfers to the IRS.

---

[60] Indeed, at the confirmation hearing, a week after the objection to claim was filed, Mr. Cuthill stated that a decision had not been made yet as to whether AEM would, in fact, be seeking a refund from the IRS.  Case No. 8-bk-4327, Doc. No. 596 at 45.

[61] Plaintiffs' argument that the IRS should have known plaintiffs intended to assert fraudulent transfer causes of action based on subsequent events in the case is irrelevant.  The legally significant question is whether **the pleading to which plaintiffs seek relation back** (here, the objection to claim) provides notice to the IRS of plaintiffs' fraudulent transfer claims.  *See* Fed. R. Civ. P. 15(c)(1).  Even if relevant to the relation back analysis, the Court finds the events identified by plaintiffs did not put the IRS (or this Court) on notice plaintiffs intended to pursue fraudulent transfer causes of action.  Indeed, as stated previously, in February 2011, less than two months before trial was scheduled on all matters related to Claim No. 4 and AEM's objection thereto, AEM acknowledged that it had affirmatively decided **not** to pursue a fraudulent transfer case.

At the same status conference, AEM identified Cuthill, the accountant who prepared AEM's amended tax returns, and an IRS representative as its only witnesses.  The fact that this witness list is inadequate to present evidence on each element of a fraudulent transfer cause of action is further indication that AEM did not provide notice of any intent to present a fraudulent transfer case.

[62] *Moore*, 989 F. 2d at 1131 (citing *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985)).

Second, no basis for equitable tolling of the statute of limitations exists.  This is not the typical equitable tolling case where plaintiffs were ignorant of their fraud causes of action until after the statute ran; indeed, they do not argue that they were.[63]    Instead, plaintiffs argue "extraordinary circumstances beyond [their] control made it impossible to file the claims on time."[64]    There is no factual basis for the Court to reach that conclusion.  Plaintiffs have been managed by an experienced receiver and represented by skilled and experienced bankruptcy counsel throughout their bankruptcies.  The ongoing litigation over the IRS' Claim No. 4 and AEM's objection thereto did not, in any way "prevent[] enforcement of the [fraudulent transfer] remedy by action."[65]    Mr. Cuthill was not limited by any stay, injunction, or other legal impediment to the filing of a fraudulent transfer action.  Moreover, nothing the IRS did prevented plaintiffs from asserting their fraudulent transfer claims before the statute of limitations ran.  AEM simply changed its mind to file a fraudulent transfer adversary proceeding after the applicable statute of limitations expired.

Third, the IRS never waived the statute of limitations defense.  The statements plaintiffs cite in their response to the motion to dismiss do not evidence the "intentional relinquishment of a known right" necessary to effect a waiver.[66]    The IRS never expressed any waiver of any defense to plaintiffs' claims.  Indeed, the IRS never knew the claims existed; as late as February 2011, AEM itself stated it was not pursuing fraudulent transfer claims.

The two-year statute of limitations in § 546(a)(1)(A) applies to plaintiffs' fraudulent transfer causes of action.  The newly raised fraudulent transfer counts, Counts III-IX, are time barred and are dismissed with prejudice.

Counts I and II of the complaint also are dismissed for a different reason.  Count I is an amended objection by AEM to Claim No. 4; it reasserts the original overpayment grounds stated

---

[63] AP No. 11-ap-87, Doc. No. 19 at 11.
[64] *Id.* (citing *In re M & L Business Machines, Inc.*, 153 B.R. 308, 311 (D. Co. 1993)).
[65] *In re M & L Business Machines, Inc.*, 153 B.R. at 311 (citations omitted).
[66] *Dade County v. Rohr Indus., Inc.*, 826 F.2d 983, 990 (11th Cir. 1987).

in the Objection to Claim and adds a new objection that the IRS' claim must be disallowed pursuant to § 502(d) unless and until the IRS refunds the fraudulent transfers alleged in the now dismissed Counts III-IX of the complaint.  Count II seeks determination of AEM's tax liability on the overpayment, based entirely on grounds previously stated in AEM's objection to claim. To the extent Counts I and II rely on the same theory as the objection to claim pending in AEM's main case, they are duplicative and unnecessary.  The objection properly initiated a contested matter within the AEM bankruptcy case, and litigation of that contested matter will resolve those issues fully.  To the extent Count I asserts an amended claim objection based on the new theory that transfers of AEM and Mirabilis funds were fraudulent, the untimely pleading is disallowed for the reasons discussed above.

In conclusion, the court simultaneously will issue separate orders consistent with this Memorandum Opinion as follows:

1.  The IRS' motion for partial summary judgment on AEM's Objection to Claim No. 4[67] is GRANTED.  AEM is not entitled to a refund of the taxes it claims to have improperly paid on behalf of the Non-Debtor Companies.

2.  AEM's motion for sanctions against the IRS[68] is DENIED.

3.  The IRS' motion in limine to exclude evidence in support of AEM's refund claim[69] is DENIED as moot.

4.  The IRS' motion in limine to exclude testimony by R.W. Cuthill and specific documentary exhibits[70] is DENIED without prejudice to the IRS' ability to make objections at trial, on a contemporaneous basis with the evidentiary offerings.

---

[67] Case No. 8-bk-4681, Doc. No. 251.
[68] Case No. 8-bk-4681, Doc. No. 260.
[69] Case No. 8-bk-4681, Doc. No. 261.
[70] Case No. 8-bk-4681, Doc. No. 262.

5. AEM's emergency motion to bifurcate the trial on its objection to Claim No. 4 and refund request and for leave to file an adversary proceeding relating back to the date it filed its Objection to Claim [71] is DENIED.

6. The IRS' motion to dismiss the adversary complaint in 11-ap-87[72] is GRANTED. The complaint is DISMISSED WITH PREJUDICE.

7. The IRS' Motion for Relief from Stay[73] is ABATED pending the request of any party to set a hearing on the motion.

The parties are directed to return to mediation to further discuss settlement, in light of these rulings. Mediation shall be concluded by **May 31, 2012**.

A non-evidentiary pretrial conference on the two remaining issues—the amount of Mirabilis' tax overpayments and the existence and amount of AEM's tax liability (IRS' Claim No. 4)—is set for **2:00 p.m. on June 13, 2012**.

DONE AND ORDERED in Orlando, Florida, on March 21, 2012.

_____
KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

---

[71] Case No. 8-bk-4681, Doc. No. 269.
[72] AP No. 11-ap-87, Doc. No. 14.
[73] Case No. 8-bk-4327, Doc. No. 660.

Copies furnished to:

Debtor: Mirabilis Ventures, Inc., c/o R.W. Cuthill, Jr., 341 N. Maitland Ave. #210, Maitland, FL 32751

Debtors' Attorney:  Latham Shuker Eden & Beaudine LLP, Attn. Justin Luna, 390 N. Orange Ave. Suite 600, Orlando FL 32801

Special Counsel for Debtor: Broad and Cassel, Attn. Roy Kobert, 390 N. Orange Ave., Suite 1400, Orlando, FL 32801

Attorney for USA: Scott H. Park, Assistant U.S. Attorney, ID No. USA084, 501 W. Church St., Suite 300, Orlando, FL 32805

Attorney for USA:  I. Randall Gold, Assistant U.S. Attorney, 501 W. Church Street, Suite 300, Orlando, FL  32805

Attorney for USA:  Valerie G. Preiss, Tax Division, U.S. Department of Justice, P.O. Box 14198, Washington, DC  20044

United States Trustee's Office:  Attn:  Elena Escamilla, 135 W. Central Blvd., Suite 620, Orlando, FL  32801